## Case No. 15,330.

UNITED STATES v. HAVEN.

[See Case No. 16,788.]

---

## Case No. 15,331.

UNITED STATES v. The HAWKE.

[Bee. 34.] [1]

District Court, D. South Carolina. July 4, 1794.

SHIPPING—VIOLATION OF LICENSE LAW—CONDEMNATION AND SALE TO ALIEN.

1. By the licensing act of the United States of February 18th, 1793 [1 Stat. 305], no coaster can be sold in a foreign port, unless her license be previously surrendered; nor is her American character changed by such transfer.

2. But if she be condemned for violation of that law, and sold under order of court, she may become foreign property. So if the purchaser under the first insufficient title comply with the requisites of the act of congress of Aug. 4th, 1790 [1 Stat. 145]. In either case she may be a lawful privateer under a foreign commission.

Before BEE, District Judge.

This suit, on the part of the United States is founded on the 8th and 32d clauses of the act for enrolling and licensing vessels employed in the coasting trade, passed February 18th, 1793. The 8th clause enacts that if any vessel enrolled and licensed conformably thereto shall proceed on a foreign voyage without first giving up her enrolment and license, and obtaining a register, she shall be liable to seizure and forfeiture. The 32d clause enacts that if any licensed ship or vessel shall be transferred in whole or in part to any person who is not at the time of such transfer, a citizen of and resident within the United States; or if such ship or vessel shall be employed in any other trade than that for which she is licensed, she shall, with her tackle, furniture and cargo found on board, be forfeited.

To support the libel, one witness, the deputy-collector, was called, who proved that this schooner on the 14th of May, during the continuation of the embargo, cleared out, by virtue of her license as a coaster, for St. Mary's, in Georgia.

It appeared from an exhibit filed by the claimant that the schooner Hawke was sold on the 10th of June at Port-de-Paix, to Bolchos, the claimant, by Cooke, captain of the schooner, in pursuance of orders from the owner, Gohier.

The district attorney contended that this vessel was proved to have departed to a foreign port, without having delivered up her license, as the 8th section of the act directs; that she was, therefore, forfeited. That when in a foreign port, she was sold to a foreigner, for which she is declared by the 32d clause to be forfeited. And that on these

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

grounds she must be condemned in this court.

It was insisted on the part of the United States that upon proof of a violation of the revenue laws, the court cannot inquire into the motives or causes thereof. That if no fraud is intended, the secretary of the treasury has power to mitigate or remit penalty, upon being satisfied by the judge of the probable innocence of the party. But that the court, in the first instance, is bound to decree according to the letter of the law. That the general rules for construction of penal statutes do not apply here; and that great injury would arise to the United States by practices of this sort. That though by the 9th clause there was some appearance of relief, which might be brought forward as operating against the 32d clause, yet that upon a careful investigation it would be found not to apply: 1st. Because the sale contemplated in the 9th clause can only mean sale to a citizen of the United States, and not to a foreigner; otherwise the law would be inconsistent. 2d. That sale to a foreigner being prohibited, the words "any district" must be construed to mean sales at sea, which are expressly mentioned in the act of December, 1792 [1 Stat. 287]. That by the rule of law, all the clauses of the act must be construed together, to make them consistent, and that the condemnation of this vessel must then follow of course.

The 5th and 9th clauses of the act having been relied on as explanatory, and as doing away with the 8th and 32d, we must examine them. The 5th only says that licensed vessels shall be no longer privileged when they cease to be wholly owned and commanded by citizens of the United States. The 9th clause provides that the license shall be delivered up within three days after the expiration of the year for which it was granted, to the collector of the district where it was granted, if the vessel be at that time within that district; if not, within three days after her next arrival within that district. If such vessel be sold out of the district, the license must be delivered up within three days after the arrival of the master, within any district, to the collector of such district; under penalty of fifty dollars. This relates only to expired licenses: and neither of these clauses applies to the present case. In the 7th clause of the act for registering vessels we find that if registered vessels are sold or transferred in a foreign port or at sea, the master is obliged, within seven days after his arrival within any district (the same words used in the 2d clause of the licensing act) to deliver up the certificate to the collector of such district. This furnishes a clue to the intention of the legislature. The registering act permits sales of vessels in a foreign port, or at sea, to foreigners. The licensing act prohibits a sale to foreigners altogether. The licensed owner may indeed dispose of his vessel, upon delivering up his license; but not otherwise. The 9th clause

restrains all sales, out of the district, to citizens and residents of the United States; and as the 8th clause makes liable to forfeiture all licensed vessels proceeding with their license to a foreign port, the place of sale can never be extended so as to include those ports; but must mean at sea, on the coasts of the United States, or on the fishing banks, where many of these vessels are employed, and, probably, often transferred: in either of which cases the master must report the sale and deliver up the license within three days after the arrival of the vessel in any district. To this view of the licensing and registering acts, and of the different clauses of each, we may with advantage apply the rules for reconciling statutes with themselves, and with others in pari materia.

To justify the proceeding in this case, the French consul has certified that he hired this vessel to carry despatches to St. Mary's, in the state of Georgia. This was lawful: but it will not be supposed that the consul meant thereby to assist an evasion of our laws. The certificate, therefore, can avail nothing. Two letters have been filed as exhibits which give reason to conclude that the schooner cleared out for St. Mary's merely to colour other designs. The answer states that the vessel was to go first to St. Mary's, and if the Las Casas was not there, was to be further directed by Bolchos, who carried the consul's despatches. It also appears from the answer that she never went to St. Mary's at all, but proceeded immediately to Port-de-Paix, where, on the 10th of June following, she was sold to Bolchos who went in her as passenger, and whose directions the captain was ordered, by his owner, to follow. These circumstances, and the caution of the captain in returning his coasting license as soon as the vessel was sold, prove clearly that the plan was fixed before she was sold. Both captain and owner knew that the license ought to have been given up before the vessel sailed on any other than a coasting voyage; but then the embargo stood in their way. To evade this they had recourse to the contrivance of which they must now abide the consequence. The libel rests on the 8th and 32d clauses of the licensing act. The answer admits a transgression of both. But the claimant says he was an innocent, bona fide purchaser in market overt; that the forfeiture must relate back to the time of sale; that it could not attach, unless the vessel remained of the same description as when first licensed; that the breach of the law preceded the transfer, and, as no decree of forfeiture had passed previously to the sale, the vessel did not come within the act.

If arguments of this sort should receive weight in this court, the laws would be nugatory. "Such an exposition of statutes must be made as to prevent their being eluded: and if their meaning is doubtful, the consequences are to be considered, in the construction of them; but if the meaning be

plain. no consequences are to be regarded, for that would be assuming legislative authority." Bac. Abr. 652. In this case there is sufficient proof that the 8th and 32d clauses of the act of congress for licensing coasters have been infringed. I decree therefore that the schooner Hawke, with her tackle, furniture, and apparel, be condemned as forfeited to the United States.

It appears from the preceding decree that the Hawke was sold on the 10th of June last at Port-de-Paix to Bolchos, by Cooke, who was master of her when she cleared out as a coaster to St. Mary's. On the same day, 10th June, Cooke informs his owner of this sale, by letter; and incloses him the schooner's American papers, obviously for the purpose of having his custom-house bond cancelled. Two days after, 12th June, Cooke, with a French commission, sailed from Port-de-Paix, in this very schooner. then called La Parisienne. armed, and having Bolchos on board, as owner. On that day they made prize of the Prosperity, a British vessel from Jamaica; and on the 27th following, brought her into this port.

Before BEE, District Judge.
On plea to the jurisdiction, the judge recapitulated the circumstances of fraudulent contrivance by which this pretended privateer had evaded the embargo, and escaped from this port by means of her coasting license. He was decidedly of opinion that the sale of this coasting vessel at Port-de-Paix was illegal, and did not change her neutral character. That upon her return infra præsidia of this court, she must be considered as American property, never divested out of the original owner. Bolchos could have no just title, but from the court, after condemnation, and compliance on his part with the requisites of the act. He observed that if our coasters could thus, under French commissions, capture neutral vessels. they, would all be converted into privateers, and the laws of this country set at defiance.
The plea to the jurisdiction was dismissed.

Bolchos afterwards availed himself of the 66th clause of the act of congress of August 4th, 1790 [1 Stat. 175], and petitioned to have the schooner Hawke delivered up to him as owner, on his giving bond with sufficient security to abide the decree of the court. A warrant of appraisement was accordingly issued, the other requisites of that act were complied with, and the vessel with every thing belonging to her was transferred to the claimant accordingly. She then sailed from this port as French property, with the same equipment. crew. and commission, that she had obtained at Port-de-Paix. On the 12th March. 1795. she captured the British brig Favourite, and brought her into Charleston, where the British consul libelled her. Bol-

chos pleaded the 17th article of the treaty with France, in bar to the jurisdiction of this court.
The judge sustained the plea, and dismissed the libel with costs.